## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BECKY JEAN WILLIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-CV-470-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Plaintiff Becky Jean Willig seeks judicial review of a decision of the Commissioner of the

Social Security Administration denying her claim for supplemental security income ("SSI") benefits

under Title XVI of the Social Security Act, 42 U.S.C. §1382c(a)(3)(A).  In accordance with 28

U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate

Judge.  [Dkt. # 9].

Plaintiff filed her application for SSI benefits on December 6, 2006, claiming an onset date

of August 23, 2006. [R. 93].  Administrative Law Judge Deborah Rose ("ALJ") conducted a hearing

on September 12, 2008.  [R. 20].  Following entry of her decision denying benefits, the Appeals

Council on May 21, 2009, denied plaintiff's request for review.  [R.1, 5].  The decision of the

Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20

C.F.R. § 416.1481.  On July 20, 2009, plaintiff filed the subject action with this Court.  [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g)

is only to determine whether substantial evidence supports that decision and whether the applicable

legal standards were applied correctly.  See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237

(10th Cir. 2001).  Substantial evidence is more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled.  42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912(a).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the relevant adjudicated period.  20 C.F.R. § 416.912(b).  Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. § 416.913.

Plaintiff raises three issues on appeal.

(1)     Whether the ALJ failed to perform a proper evaluation of the opinion of plaintiff's treating physician, Shirley Welden, M.D.

(2)     Whether the ALJ failed to propound a proper hypothetical question to the vocational expert at step 5.

(3)     Whether the ALJ failed to perform a proper credibility determination.

[Dkt. # 15 at 2].

2

## Background

Plaintiff was born on October 1, 1960.  She was 46 years old when she filed her SSI application.  [R. 93].  Plaintiff is a high school graduate, attending all regular classes, with special training in cosmetology.  [R. 144, 222].  Plaintiff has been married and divorced two times and has three adult children who are no longer in the home.  Her medical history includes a complete hysterectomy, urethra surgery, a screw placed in her ankle, and a fractured left clavicle.  [R. 226, 227].  Plaintiff resides alone.  [R. 93, 94, 221, 222].  She is 5 feet 6 inches tall and weighs 126 pounds.  [R. 223].  From 1976 through 1988 plaintiff was a self employed beautician.  She reported no earnings from 1989 through 2000.  She resumed her work as a self employed beautician, doing just hair cuts from 2001 through 2007.  [R. 98].  Plaintiff's annual income has been consistently low over the years, from $1,609.00 in 1986 and to a high of $5,726.00 in 2002.  Her last reported income was in 2007 and was $3,426.00.  [R. 98].

Plaintiff alleges she has been chronically ill since childhood.   She rode and trained horses.  Twenty-six years ago, a horse fell on her, injuring her neck.  She was also thrown from a horse, injuring her feet and ankle.  [R. 153, 221, 222].  There are no contemporaneous medical records of these injuries.  Plaintiff claims she has taken Lortab, a narcotic painkiller, for over 28 years.  [R. 222, 224].  Plaintiff lists her current prescription medications as Cymbalta (anti-depressant), Duragesic Patches (pain control), Estrogen (hormone replacement), Flexeril (muscle relaxant), Lasix (diuretic), and Lortab (pain control).  [R. 143].  Plaintiff's most recent x-rays and MRI were taken 15 years ago.  [R. 167].  The administrative record contains plaintiff's treatment records as follows:

1)    Emergency Room at Jane Phillips Episcopal Medical Center, February 5, 2005 through February 7, 2005 and April 11, 2007 (generalized muscle pain and left ankle pain) [R. 190-199, 268-274];

3

2)    Dr. Michael Ryan M.D., February 10, 2004, November 4, 2004, September 2, 2005, September 26, 2005, and February 27, 2006 (middle ear problems, fibromyositis NOS, depressive disorder and neck pain) [R. 201-213];

3)    Dr. John Merriman, M.D., January 22, 2008 through May 8, 2008 (foot, knee and ankle injections) [R. 266-267]

4)    Dr. Shirley Welden, M.D. August 23, 2006 through March 20, 2007 and May 17, 2007 through January 29, 2008 (fibromyalgia) [R. 276-287, 298-303].

Plaintiff alleges she became disabled on August 23, 2006, as a result of cervical problems, fibromyalgia, mental problems, headaches, fatigue, memory problems, concentration problems and carpal tunnel syndrome. [R 93, 138]. Plaintiff's initial appointment with Dr. Welden was on August 23, 2006. [R. 303]. Plaintiff did not receive any treatment with Dr. Welden prior to her alleged onset of disability.

The ALJ found that plaintiff has not engaged in substantial gainful activity since December 1, 2006 (plaintiff worked after the disability onset date but her work activity did not rise to the level of substantial gainful activity). The ALJ determined plaintiff had $4,360.00 in earnings for 2007. [R. 11]. Plaintiff's severe impairments were determined to be fibromyalgia, osteoarthritis of the neck and back, depression, anxiety and history of an ankle fracture. [R.11]. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, specifically listings 1.02 (major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 12.04 (affective disorders), or listing 12.06 (anxiety related disorders). [R. 11].

The ALJ found plaintiff has moderate limitations in all three relevant areas: daily activities, social functioning and concentration, persistence or pace; and that she had not experienced any episodes of decompensation. [R. 12-13].

4

In connection with her application for benefits, plaintiff offered the opinion of her treating physician, Dr. Shirley Welden, who determined that plaintiff was incapable of full time sustained work activity and several agency consultant experts who opined that plaintiff's impairments were limiting but that she could perform simple tasks and was capable of performing activities of daily living.  [R. 236, 250, 253].

The ALJ found plaintiff has the residual functional capacity ("RFC") to perform a full range of light work, limited to only occasional interaction with the general public and to simple routine tasks.  [R. 14].  The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence and limiting effects of her symptoms.  [R. 17].  The ALJ found that plaintiff could not perform her past work as a beautician, but based on the testimony of the vocational expert, the ALJ found her capable of unskilled light occupational work, such as mail handler/packager, laundry press operator and sorter, and these jobs existed in sufficient numbers in Oklahoma and the national economy to preclude disability.  [R.19].  The ALJ concluded that although plaintiff suffered from multiple impairments, she could perform certain light-duty, unskilled work.  This finding was made at step five in the sequential evaluation outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

### Discussion

As her first assignment of error, plaintiff claims the ALJ failed to perform a proper evaluation

---

[1]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience.  Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

of the opinion of her treating physician, Dr. Welden. [Dkt. # 2 at 2].  Plaintiff relies on two Medical

Source Opinions completed by Dr. Welden that conclude plaintiff could not work on a sustained

basis.  [R. 217-218, 262-264].

The proper procedure for evaluating the opinion of a treating physician is well established.

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the

notice of determination or decision for the weight assigned to a treating physician's opinion."

Watkins v. Barnhart,  350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and

Social Security Ruling 96-2p, 1996 WL 374188 at 5).  "The type of opinion typically accorded

controlling weight concerns the 'nature and severity of the claimant's impairments including the

claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v.

Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[2]  Generally, an ALJ should give

more weight to opinions from treating physicians.  Watkins, 350 F.3D at 1300 (citing 20 C.F.R.

§ 404.1527(d)(2)).  However, it is error to give the opinion controlling weight simply because it is

provided by a treating source.  Id.

In determining whether the opinion should be given controlling authority, the analysis is

sequential.  First, the ALJ must determine whether the opinion qualifies for "controlling weight,"

by determining whether it is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and whether it is consistent with the other substantial evidence in the

administrative record.  Id.  If the answer is "no" to the first part of the inquiry, then the analysis is

complete.  If the ALJ finds that the opinion is well-supported, she must then confirm that the opinion

---

[2]  Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed.
R. App. 32.1:  10th Cir. R. 32.1.

is consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either

of these respects, then it is not entitled to controlling weight."  Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial

evidence in the record, it is entitled to deference and must be evaluated in reference to the factors

enumerated in 20 C.F.R. § 416.927.  Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the
> nature and extent of the treatment relationship, including the treatment provided and
> the kind of examination or testing performed, (3) the degree to which the physician's
> opinion is supported by relevant evidence, (4) consistency between the opinion and
> the record as a whole, (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's attention
> which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).  The ALJ must give

good reasons in her decision for the weight she ultimately assigns the opinion.  Id. (citing 20 C.F.R.

§ 404.1527(d)(2)).

Third, if the ALJ rejects the opinion completely, she must then give specific, legitimate

reasons for doing so.  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)).  The reasons

must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating physician's opinion and the reasons for that weight.  Anderson v. Astrue, 319

Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

In the instant case, the ALJ set forth Dr. Welden's two Medical Source Opinions.

A Medical Source Opinion of Residual Capacity was prepared by Shirley J. Welden,
M.D. on January 4, 2007.  Dr. Welden opined that claimant can sit, and stand/walk
(combined) for 2-3 hours; lift and carry 10 pounds.  Dr. Welden states the medical
findings that support the assessment are:  patient has severe cervical disc disease
history 15-16 years ago; patient has had no workup since then; patient has carpel

tunnel syndrome on examination with loss of muscle (remaining of writings is [sic] illegible) (Exhibit 4F). Another Medical Source Opinion of Residual Functional Capacity was prepared by Dr. Welden dated December 31, 2007. Dr. Welden states the claimant fits criteria for fibromyalgia; her lumbar instability on exam; x-ray of neck/back show osteoarthritis changes (remaining writing is illegal) (Exhibit 13F).

[R. 15-16]. The ALJ did not give controlling weight to Dr. Welden's opinions, because she found they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the administrative record.

The Court finds the ALJ's determination is supported by the record. There are no laboratory or diagnostic tests in the administrative record. Although Dr. Welden performed the fibromyalgia "trigger point" examination, the ALJ determined that the objective medical records do not support the severity of pain alleged by plaintiff. [R. 17]. The ALJ relied upon the opinions of the agency consultants, who from their observations and clinical examinations of plaintiff, came to conclusions inconsistent with Dr. Welden's observations. The ALJ cited and adopted the physical capacity assessment of Dr. Dalessandro and determined that Dr. Dalessandro's inconsistent opinion should be afforded greater weight:

A consultative examination was performed on February 16, 2007 by Angela A. Dalessandro, D.O. at the request of the Agency. Dr. Dalessandro records claimant having no problems getting on or off the examination table. She is alert and oriented to the 3 spheres. There was no evidence of muscle atrophy or paralysis or ankle clonus. Her sensory, motor, and vibratory sensations are intact and she can heel-and-toe walk. His [sic] assessment was she had normal gait to speed, stability, and safety. Dexterity of gross and fine manipulation is present. There are no joint deformities or swellings (Exhibit 7F).

[R. 16]. The ALJ cited and adopted the mental assessment of Dr. Burnard Pearce, which she found was inconsistent with Dr. Welden's opinion:

A psychiatric Review Technique by Burnard Pearce, Ph.D. was prepared February 26, 2007, at the request of the Agency. Dr. Pearce opined claimant only had a

8

moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Dr. Pearce's functional capacity assessment conclusions were that claimant can perform simple tasks with routine supervision; can relate to supervisors and peers on a superficial work basis; can adapt to a work situation; and cannot relate to the general public (Exhibits 8F and 9F).

[R. 16].   The ALJ relied on the opinion of Dr. Luther Woodcock:

A Physical Residual Functional Capacity evaluation by Luther Woodcock, M.D., was prepared February 27, 2007, at the request of the Agency.  Dr. Woodcock concludes that claimant has normal vision, normal gait, and normal range of motion with some decreased range of motion in the back, she got on and off the exam table without problems, and claimant is able to perform her activities of daily living (Exhibit 10F).

[R. 16].   The ALJ discounted Dr. Welden's opinion that plaintiff suffered a "very high" response rating for depression, based on Dr. Welden's administration of the Beck Depression Index of 50/60. [R. 217].   The ALJ found that plaintiff's complaints "seem exaggerated and out of proportion to the findings."[3]   [R. 19].   In determining that Dr. Welden's opinions were not entitled to controlling authority, the ALJ applied the factors in 20 C.F.R. § 416.927, and made her determination from the limited medical evidence presented.  The ALJ found:

As claimant's treating physician, Dr. Welden continues to treat claimant's alleged

---

[3]  In answer to how her illnesses and conditions limit her ability to work, plaintiff said:

Sometimes my head won't turn in either direction due to stiffness and pain, difficult to raise my arms.  It is hard to hold my head up at all.  My arms are numb constantly. My skull sits crooked on my spine and I have headaches.  My muscles, joints, tendons cause me chronic pain . . . muscle spasms all over my body.  This is a constant problems [sic] 24 hours a day.  The worst is my upper body especially under my shoulder blades.  I have no grip in my hands and my fingers get numb.  This is both hands equally.  I have problems holding things, lifting things, carrying things. I get depressed and just want to stay in my house – I've stayed in my house for up to 13 straight days.  I can't do the things I used to do such as work, social activities, etc. . . I find myself exhausted and when I get really tired and stressed, I'll just start vomitting [sic] no matter where I am.  [R. 138].

fibromyalgia with the same pain medications for all these years. There is no indication in Dr. Welden's medical reports reflecting additional testing or referral to any specialist for pain management or otherwise. There is no laboratory, x-rays, or other testing in the medical records of Dr. Welden to support claimant's allegations of carpel tunnel syndrome, cervical disc disease, fibromyalgia, osteoarthritis of the neck and back, or history of left ankle fracture. As to Dr. Welden's opinion evidence of claimant's limitations and restrictions, it is inconsistent with the medical records evidence to support such claims. After careful consideration of the evidence, I give greater weight to the opinion evidence of Dr. Dalessandro as it is more consistent with the minimal objective findings.

[R. 17]. An ALJ may discount a treating physician's opinion if it is based on the plaintiff's subjective statements. See e.g. White v. Barnhart, 287 F.3d 903, 906 (10th Cir. 2001). In this instance, there are conflicting observations by the several specialists who independently examined plaintiff and very little objective medical evidence, other than clinical examinations. It is the central function of the ALJ to resolve conflicting evidence. It is not the Court's function to reweigh the evidence.

The ALJ noted that a portion of Dr. Welden's examination notes were illegible. Plaintiff contends Dr. Welden's illegible handwriting imputed a duty on the ALJ to recontact Dr. Welden "for an explanation." [Dkt. # 15 at 3]. The Tenth Circuit has held that it is not the rejection of the treating physician's opinion that triggers the duty of the Commissioner to recontact the physician, "rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." White v. Barnhart, 287 F.3d 903, 907 (10th Cir. 2001). The ALJ based her rejection of Dr. Welden's opinion on the lack of laboratory tests, other objective medical evidence performed, and conflicting clinical examinations by the agency physician, not on the inadequacy of the evidence received. Thus, there is no merit to this argument.

In sum, plaintiff has alleged error by the ALJ in failing to perform a proper evaluation of Dr.

10

Welden's opinion.  As shown above, the ALJ followed the proper procedure set forth in <u>Watkins</u> in evaluating Dr. Welden's opinion, and the ALJ articulated adequate reasons for giving less weight to her opinions.  Overall, the ALJ gave good reasons for her assessment of her opinions and for adopting the RFC assessments of Dr. Burnard Pearce and Dr. Luther Woodcock.  [R. 14, 236, 259]. In light of the narrow scope of review on appeal, the Court concludes that the record contains substantial evidence supporting the ALJ's decision and that the correct legal standard was applied.

As her second assignment of error, plaintiff contends the ALJ failed to propound a proper hypothetical question to the vocational expert because she failed to include all the impairments documented in the record.. [Dkt. # 15 at 6].  The ALJ tendered the following hypothetical question to the vocational expert:

> Assuming an individual who is 47 years of age with a high school education and the past relevant work history you've just described, if that individual were limited to light work as defined in the regulations such that she could lift or carry up to 10 pounds frequently, up to 20 pounds occasionally, could stand or walk approximately six hours a day, could sit approximately six hours a day, if she could have only occasional interaction with the public and if she were limited to simple routine tasks ordinarily associated with unskilled work . . .

[R. 53].  Plaintiff faults the ALJ for not including Dr. Welden's opinion that plaintiff has pain and numbness in her hands, decreased sensations in her arms, weak hand grip, and otherwise account for plaintiff's carpal tunnel syndrome.  The Court finds no merit in this argument, because the ALJ restricted her hypothetical to the physical assessment from Dr. Pearce, whose opinion was given greater weight.  The restrictions she adopted, unskilled light work, only simple tasks, and occasional contact with the general public, accommodated plaintiff's moderate restriction in physical and mental functioning.  Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments.  However, they need only reflect impairments and limitations that are borne

11

out by the evidentiary record. <u>Evans v. Charter</u>, 55 F.3d 530, 532 (10th Cir. 1995). The Court finds that the limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence. The ALJ entered the following findings to support her assessment of only moderate restrictions in all three categories of daily living activities, social function, concentration, and persistence or pace. She found:

> *Activities of daily living* . . . I have assessed the quality of these activities by the independence, appropriateness, effectiveness and sustainability. . .Claimant's testimony did not indicate that she was not maintaining her home, using the telephone, or caring for her personal hygiene other than when she was having a bad day, she didn't feel like fixing her hair. She uses the microwave to cook her meals. She doesn't open her mail because she doesn't have the money to pay her bills. In regards to claimant's restriction of daily activities the claimant is moderately limited.

> *Social functioning* . . . Claimant testified that on bad days she doesn't answer the phone or door. There was no testimony that claimant was unable to get along with others. In fact, the testimony indicated that her mother and children visit her regularly. As for the claimant's social functioning, she is moderately restricted.

> *Concentration, persistence or pace* . . .major limitations in this area can often be assessed through clinical examination or psychological testing. Regarding the claimant' concentration, persistence or pace, she is also moderately limited in this area.

[R. 12-13]. Thus the inclusion in the hypothetical question of light work as defined in the regulations, only occasional interaction with the public, and limited to simple routine tasks associated with unskilled work are sufficient limitations under the evidence to account for plaintiff's moderate limitations.[4] The hypothetical question propounded to the vocational expert was consistent with the ALJ's findings as to plaintiff's RFC. "The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record." <u>See Jordan v. Heckler</u>, 835 F.2d 1314,

---

[4] The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, standing or sitting, off and on for a total of 6 hours of an 8-hour day, with some pushing and pulling of arm-hand or leg-foot controls. SSR 83-10.

1317 (10th Cir. 1987).   The ALJ's determination of plaintiff's limitations are supported by substantial evidence.   Thus, the Court finds no error in the ALJ's hypothetical question to the vocational expert.

As her third issue, plaintiff challenges the ALJ's credibility determination.  [Dkt. # 15 at 7]. The ALJ reviewed plaintiff's testimony regarding her purported physical and mental limitations.  She claimed to have chronic pain all her life, and she was diagnosed with fibromyalgia 8 or 9 years ago. Yet, she found plaintiff had the capacity to work and cut hair since 1993, or for the past 15 years. She testified the reasons she could not work was "everything about work, standing all day with arms out and dealing with people griping."  [R. 14].  She testified that fatigue or cold weather made her pain worse, and sometimes she could not feel her feet, so she would fall down.  Plaintiff claimed she had shingles and had a stroke in the presence of Dr. Merriman, yet there was no medical evidence to support her claim.  [R. 14].  She claimed she went to the emergency room, several days after her stroke, but there were no records of her visit.  She claimed she waited for 5 hours and then left without being examined.  [R. 14-15].  She claimed to have been to "a lot of doctors" and that she has been on "medications for the majority of her life," but there were no medical records to support these claims.  The ALJ noted plaintiff claimed she could stand for only 15 minutes, walk for only 15 to 20 minutes, sit for 30 minutes, because the pain medication that she took "all day long" made it difficult for her concentrate.  She further noted plaintiff's testimony that "[h]er neck is stuck to the right side of her body; and, she can't raise her arms or bend over because it will give her migraines." In finding these and other allegations less than credible, the ALJ concluded:

> In summary, the above residual functional capacity assessment is support by the examination and opinion of Dr. Dalessandro and the state agency findings are consistent with Dr. Daleassndro's opinion.  The claimant is inconsistent in testifying

that she has such severe and mental limitations and her complaints seem exaggerated and out of proportion to the findings.  Claimant testified she had a stroke but the medical records fail to support that allegation.  She continued to work as a hairstylist after her alleged onset date, indicating that she can work.

[R. 18].  An ALJ's credibility findings warrant particular deference because she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.   White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002).  Further, the ALJ linked her credibility determination to supporting evidence.  She explained her credibility determination, citing inconsistencies between plaintiff's testimony regarding her functional ability because of pain and reports given by the agency consultants, who had the ability to observe and examine plaintiff.  In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995),  the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors.  The court explained that the ALJ must refer to the specific evidence she is relying on in determining credibility and link her credibility findings to specific evidence.  Id. at 391.  In the instant case, the ALJ complied with this standard.  In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence she relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied."  Id. at 1372.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied.  Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

14

SO ORDERED this 28th day of September, 2010.

T. Lane Wilson
United States Magistrate Judge